IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:11-CR-00247-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MARK A. NEUMAN, TIMOTHY D. LARKIN, and LANE D. LYONS, | |
| Defendants. | |


S. AMANDA MARSHALL
United States Attorney
District of Oregon
**SETH D. URAM**
Assistant United States Attorney
**HELEN L. COOPER**
Special Assistant United States Attorney
1000 S.W. Third Ave., Ste. 600
Portland, OR 97204
(503) 727-1000

              Attorneys for Plaintiff

**EMILY SIMON**
26 N.E. 11th Ave.
Portland, OR 97232
(503) 239-6101


1  - OPINION AND ORDER

**TODD H. GROVER**
WARD GROVER LLP
233 S.W. Wilson Ave., Ste 204
Bend, OR 97702
(541) 312-5150

    Attorneys for Defendant Mark A. Neuman

**JANET LEE HOFFMAN**
**CARRIE MENIKOFF**
HOFFMAN & ASSOCIATES, LLC
1000 S.W. Broadway, Ste. 1500
Portland, OR 97205
(503) 222-1125

    Attorneys for Defendant Timothy D. Larkin

**JOHN S. RANSOM**
RANSOM BLACKMAN LLP
Congress Center
1001 S.W. Fifth Ave., Ste 1400
Portland, OR 97204-1144
(503) 228-0487

    Attorneys for Defendant Lane D. Lyons

**BROWN, Judge.**

  This matter comes before the Court on Defendants' Motion (#40) for a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f). For the following reasons, the Court **DENIES** Defendants' Motion.

### BACKGROUND

  On June 22, 2011, a grand jury returned an Indictment charging Defendants with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (Count I) and Conspiracy to Commit

2   - OPINION AND ORDER

Transactional Money Laundering in violation of 18 U.S.C. § 1956(h). The Indictment describes the nature of Defendants' business activities that led to the charges against them as summarized below:

Beginning in 1991 Summit Accommodators was a "Qualified Intermediary" company doing business in Bend facilitating the exchange of "like-kind" or "1031" investment or income-producing real property by customers (referred to as Exchangers). The Exchange permitted the Exchangers to defer capital-gains taxes owed to the federal government upon the sale of the property. To obtain that tax deferral, Exchangers were required to deposit sale proceeds (Exchange Funds) with a Qualified Intermediary (*i.e.*, Summit) to identify like-kind replacement property within 45 days and to close on the purchase and sale of that property within 180 days.

Defendant Mark A. Neuman was an original owner-operator of Summit. Defendant Timothy D. Larkin was Director of Operations of Summit from December 2002 to December 2008. Defendant Lane D. Lyons was outside counsel for Summit from 2002 through May 2005. Larkin and Lyons became owner-operators of Summit in early 2006.

From 2004 to 2008 the balances of Exchange Funds under Summit's control ranged from $50-$110 million and its revenues ranged from $2-$7 million.

3   - OPINION AND ORDER

The Indictment accuses Neuman, Larkin, Lyons, and Brian Stephens, an unindicted co-conspirator, with concealing from the Exchangers the fact that they were unlawfully diverting, (*i.e.,* laundering) some of the sales proceeds to their own businesses through an entity called Inland Capital Corp.

**STANDARDS**

Federal Rule of Criminal Procedure 7(f) provides the Court "may direct the government to file a bill of particulars."

> The bill of particulars has three functions: "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes."

*U.S. v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979)(internal citations omitted). "[T]here is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy." *Id.* "A defendant is not entitled to know all the [e]vidence the government intends to produce, but only the [t]heory of the government's case." *Id*. at 1181.

**DISCUSSION**

I.  Challenged Accusations.

Defendants concede "[t]he indictment fairly well outlines the major components of the alleged offenses," but they, nonetheless, contend the allegations against them are vague. Moreover, they assert the government is unfairly relying on Defendants to review "mountains" of documents in order to discover the "particularized evidence" that the government will rely on at trial to prove its case.  Accordingly, Defendants assert the government should have to describe the "Manner and Means of the Conspiracy" set forth in ¶¶ 15 and 23 and the overt acts described in ¶ 29 of the Indictment more particularly by identifying "[w]ho and/or what is the alleged victim or victims of the alleged wire fraud."

In particular, Defendants seek a Bill of Particulars as to the following allegations in the Indictment:

In **Paragraph 15**, the government alleges:

> With the defendants' knowledge and direction, *Summit's employees and affiliates falsely (unknown to them) represented to prospective customers* that if they used Summit for a 1031 exchange, Summit would deposit the Exchange Funds into a financial institution and maintain the Exchange Funds in depository accounts, money market accounts, or certificates of deposit, where the Exchange Funds would remain available to complete the exchange process.

Emphasis added.

5  - OPINION AND ORDER

Defendants seek more specificity as to the identities of the employees who made these representations, the persons who directed the employees to make the representations, and the customers to whom the representations were made.

In **Paragraph 23**, the government alleges:

> It was further part of the conspiracy that *the defendants and their coconspirators did not disclose to most of Summit's employees, or to most of the owner-operators of Summit's affiliates, but instead actively concealed, that they were using Exchange Funds to finance real estate investment projects in which they had direct personal interests,* for loans to individuals and business unrelated to Summit, or for their personal benefit. Nor did the defendants and their coconspirators disclose to most of these individuals, but instead actively concealed, that they used Inland as the Exchange Fund conduit.

Emphasis added.

Defendants seek the identities of Summit's employees and owner-operators of Summit's affiliates who were informed by Defendants and their co-conspirators of Defendants' borrowing of Exchange Funds through Inland Capital.

In **Paragraph 29**, the Indictment charges at least one of the co-conspirators committed the following separate overt acts to accomplish the object of the conspiracy:

> a. The defendants and their coconspirators executed, or caused to be executed Summit's contract *with individual Exchangers* . . . ;

        b.  The defendants and their coconspirators used, or caused to be used, *a standard wire transfer instruction letter* typically directed to a title company holding the proceeds of an Exchanger's sale of exchange property, stating "The net proceeds of sale in this transaction are to be wired to our trust account as follows . . . ;

        c.  The defendants or their coconspirators *created and transmitted e-mails* in which they discussed the need to conceal from Summit's Exchangers, affiliates, and employees, their use of Exchange Funds for real estate investment projects . . . ;

        d.  The defendants or their coconspirators *created and transmitted e-mails* to the owners/operators of Summit's affiliates/ Branch Partners in which they (1) concealed they had used Exchange Funds for real estate investment projects in which they had personal interests, and (2) intentionally mis-characterized their mis-use of Exchange Funds as a "minor portion [of Summit's total Exchange Funds] in highly secured short-term notes" . . . .

Emphasis added.

**II.  Analysis.**

      As noted, Defendants seek the identification of the "individual Exchangers" referred to in ¶ 29(a), the particular "standard wire transfer instruction" referred to in ¶ 29(b), and the particular emails referred to ¶ 29(c) and (d).  Defendants contend they are hampered by not knowing the specific details of the allegations in ¶¶ 15, 23, and 29, particularly in light of the undisputed fact that "multiple individuals gave money to

7   - OPINION AND ORDER

Summit . . . for purposes of completing a 1031 property exchange . . . and they didn't lose any money, and they got their property, and life went on and there was no problem with it." *See* Oct. 11, 2011, Hearing Tr., at 85-87.

During oral argument, Defendants relied on the following cases in which the courts ordered the government to file a Bill of Particulars:  *U.S. v. Bortnovsky,* 820 F.2d 572 (2d Cir. 1987); *U.S. v. Davidoff,* 845 F.2d 1141 (2d Cir. 1988); *U.S. Vasquez-Ruiz,* 136 F. Supp. 2d 941 (N.D. Ill. 2001); *U.S. v. Upton,* 856 F. Supp. 727 (E.D. N.Y. 1994); and *U.S. v. Nachamie*, 91 F. Supp. 2d 565 (S.D. N.Y. 2000).

In *Bortnovsky* the court reversed the convictions of the defendants charged with fraud and racketeering based on the predicate acts of arson, murder, and fraud.  The court held the trial court abused its discretion when it denied the defendants' motion for bill of particulars, which, if granted, would have identified the dates of fake burglaries and the identity of three fraudulent documents that were part of a scheme to obtain insurance proceeds from the Federal Insurance Administration.  The court noted "the relevance of key events was shrouded in mystery at the commencement of and throughout the trial."  *Id.* at 575-76.  The court then chided the government for providing

8   - OPINION AND ORDER

"mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of fifteen burglaries would be demonstrated to be staged." *Id.*

In *Davidoff,* a RICO case, the Second Circuit held the government should have identified the victims of a discrete extortion scheme that was aimed at victims of companies unrelated to the company named in the indictment.  The court stated:  "[I]t is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, *allegations* not made prior to trial."  *Id.* at 1154 (emphasis added).

In *Vasquez-Ruiz,* the court found a bill of particulars was appropriate when the government had charged a physician with seven counts of mail fraud and 18 counts of health-care fraud involving falsification of entries in medical records, ordering unnecessary medical tests, and submitting $400,000 in fraudulent bills to insurers.  The court reasoned the defendant "was entitled to know prior to trial certain basic matters:  the identity of the patient-victims of the alleged offenses, the records claimed to be false entries, and any alleged fraudulent bills to insurers."  136 F. Supp. 2d at 943.

9    - OPINION AND ORDER

In *Upton* the court noted a bill of particulars is appropriate when the indictment is insufficient to permit preparation of an adequate defense.  856 F. Supp. at 740-41.  In that case the government supplied the defendants with a bill of particulars that identified wire communications on which it would rely to prove that the defendants falsified records at the Atlanta airport.  The court required the government also to provide the defendant with a list of the documents that it intended to rely on at trial but denied te defendants' motion for a bill of particulars in all other respects.  856 F. Supp. at 740-41.

Finally, in *Nachamie* the court held the government did not fulfill its obligation to give the defendant adequate notice of the Medicare fraud charge against him, which involved 2,000 Medicare claims and more than 200,000 pieces of paper.  91 F. Supp. 2d at 570-71.

In the present case, the government contends the Indictment "is more than adequately detailed to allow defendants to prepare for trial, prevent unfair surprise and protect against a future prosecution for the same offenses."  The government asserts it has provided Defendants with "almost all the detailed information they request" in their Motion, including memoranda of interviews

that the government conducted with Summit employees, emails among and between Defendants, and all other emails that the government printed from Summit computers.

The Court is not persuaded by Defendants or the cases on which they rely that they are unable to "figure out what this case really is" or "to prepare a defense" without a Bill of Particulars.  The Indictment sets forth the "Manner and Means of the Conspiracy" and identifies 44 separate, specific, monetary transactions in which Exchange Funds, purportedly held by Summit in Summit accounts on behalf of the Exchangers, were allegedly transferred from Summit accounts into Inland bank accounts and then out of the Inland bank accounts for various purposes that allegedly benefitted Defendants.

Thus, the Court agrees with the government that Defendants have sufficient information to understand the theory of the government's case, and they have access to the evidence necessary to understand the proof that the government will be offering at trial.

Accordingly, the Court concludes the Indictment adequately informs Defendants of the nature of the charges against them with sufficient precision to enable them to prepare for and to avoid surprise at trial.

## CONCLUSION

For these reasons, the Court **DENIES** Defendants' Motion (#40) for a Bill of Particulars.

IT IS SO ORDERED.

DATED this 1st day of November, 2011.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

12 - OPINION AND ORDER