IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,            3:11-cr-00247-BR

       Plaintiff,            OPINION AND ORDER

v.

MARK A. NEUMAN, TIMOTHY D.
LARKIN, and LANE D. LYONS,

      Defendants.


**S. AMANDA MARSHALL**
United States Attorney
**SETH D. URAM**
**DONNA B. MADDUX**
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

      Attorneys for Plaintiff

**JANET LEE HOFFMAN**
**CARRIE MENIKOFF**
1000 S.W. Broadway, Suite 1500
Portland, OR 97205
(503) 222-1125
Attorneys for Defendant Larkin

**JOHN S. RANSOM**
Ransom Blackman, LLP
1001 S.W. Fifth Avenue, Suite 1400
Portland, OR 97204
(503) 228-0487

**MATTHEW A. SCHINDLER**
501 Fourth Street, #324
Lake Oswego, OR 97034
(503) 699-7333

       Attorneys for Defendant Lyons

**EMILY SIMON**
26 NE 11th Ave.
Portland, OR 97232
(503) 239-6101

**TODD H. GROVER**
Ward Grover, LLP
233 S.W. Wilson Avenue, Suite 204
Bend, OR 97701
(541) 312-5150

       Attorneys for Defendant Neuman


**BROWN, Judge.**

    This matter comes before the Court on the government's
Motion (#360) *in Limine* to Preclude the Testimony of Proposed
Expert Witness Shawn Davis, Ph.D.

    After considering the parties' submissions and having heard
the parties at oral argument on June 19, 2013, the Court
concludes Defendants' untimely notice regarding Dr. Davis's
proposed testimony prejudices the government at this stage of the
proceedings, and, in any event, Defendants have not established
that Dr. Davis's testimony is reliable or would be helpful to the

2 - OPINION AND ORDER -

jury in determining the issues at hand.  The Court, therefore, **GRANTS** the government's Motion *in Limine* and **EXCLUDES** the proposed testimony of Dr. Davis.


<u>BACKGROUND</u>

On June 9, 2013, the Sunday evening before jury selection and the beginning of trial, Defendants filed a preliminary Rule 16 Notice (#352) indicating their intent to call Shawn Davis, Ph.D., a cognitive psychologist, as an expert witness during trial.  On June 12, 2013, Defendants filed a more detailed Rule 16 Disclosure (#355).  On June 17, 2013, the government filed its Motion (#360) to Preclude Dr. Davis's testimony.  On June 19, 2013, Defendants filed Dr. Davis's full report (#364) with the Court.  Finally, on June 19, 2013, the Court heard oral argument and took this matter under advisement.

Dr. Davis is an Associate Professor at the School of Professional Psychology, Pacific University, Hillsboro, Oregon. He was formerly an Adjunct Assistant Professor of Clinical Psychology at the University of Houston, Texas.

Dr. Davis was provided with various screen shots from the "Services and Fees" section of Summit's website from 2001 to 2009, various Summit website screen shots from the Wayback Machine from 2001 to 2009, the parties' trial briefs, a Summit organizational Power Point presentation, assorted FBI reports

from interviews with various Summit employees involved with Summit's website, Summit brochures, and assorted emails between Defendants and Summit employees.  Defs.' Rule 16 Disclosure (#355).

In his Expert Witness Report (#364-1) Dr. Davis states "conditions were present that would constitute an unintentional presentation of business structure and practice within the website and the brochure document."  Dr. Davis points out that several individuals were involved in the creation of the website, which "enhances the likelihood of errors."  Dr. Davis concludes because the website and brochure were poorly designed and text-heavy, "there is an increased likelihood that details contained within the information will be overlooked."  Dr. Davis notes when print or web-based material is in place for a long time, it leads to "cognitive stability" where the content is less likely to be questioned or viewed critically.  Defs.' Rule 16 Disclosure (#355) at 4.  Thus, Dr. Davis would offer his opinion that "it is possible that Defendants would not have been aware of the specific statements contained on the website and the printed materials."  *Id.* at 5.

Defendants are expected to testify that no one particular person was responsible for or aware of the content of the website, specific webpages, or brochures, and each is expected to assert that he did not know of the specific representations on

4 - OPINION AND ORDER -

the website around which the government's "intent to defraud"
case is built in part.  According to Defendants, Dr. Davis's
testimony is necessary to corroborate their expected testimony.


**DISCUSSION**

I.    **Defendants' Untimely Rule 16 Notice Prejudices the
      Government.**

      A.    **Standards**

The Sixth Amendment guarantees a defendant the right "to
have compulsory process for obtaining witnesses in his favor."
U.S. Const. amend. VI.  Although a defendant's right to present
witnesses on his behalf is fundamental, it is not limitless.
*Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988).  *See also*
*Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)(presentation of
defense evidence may be required to "accommodate other legitimate
interests in the criminal trial process").  Defendants must
adhere to the "rules of procedure that govern the orderly
presentation of facts and arguments" to assure fairness and
reliability in the adversarial process.  *Taylor*, 484 U.S. at 411.
*See also Chambers*, 410 U.S. at 302; *United States v. Scheffer*,
523 U.S. 303, 308 (1998).

Trial courts may exclude a witness for a discovery violation
in a criminal trial.  *United States v. Verduzco*, 373 F.3d 1022,
1033 (9th Cir. 2004).  *See also United States v. Nobles*, 422 U.S.

225, 241 (1975)(preclusion of proposed witness's investigative report as sanction for untimely disclosure did not violate Sixth Amendment); *United States v. Henderson*, 241 F.3d 638, 650 (9th Cir. 2000)(preclusion of alibi witness testimony disclosed on day three of a four-day trial was an appropriate sanction); *United States v. Hoffecker*, 530 F.3d 137, 184-85 (3d Cir. 2008) (exclusion of testimony of three expert witnesses for defense was appropriate sanction for untimely notice).

Federal Rules of Evidence 16(a)(1)(G) and 16(b)(1)(C) govern the reciprocal discovery of expert witnesses.  If a party fails to comply with Rule 16(b)(1)(C), the Court may:

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2).

**B.   Analysis**

In the two years that this complex, multi-defendant case has been pending, the Court has engaged counsel in ongoing and active case-management hearings in an effort to avoid exactly what has occurred here:  the unexpected proposed introduction of new evidence during trial that threatens to delay proceedings and to prejudice a party.  One of those efforts was a pretrial hearing on February 28, 2013, during which the necessity of reciprocal

6 - OPINION AND ORDER -

discovery, including expert-witness disclosures, was discussed
and reviewed.  In its Order (#229) issued March 1, 2013, the
Court set a deadline of April 26, 2013, for expert-witness
disclosures under Rule 16.  Echoing its statements to counsel at
the February 28, 2013, hearing, the Court reiterated in its Order
that it had the discretion to exclude evidence as a sanction for
violation of the established discovery deadlines and cited
*Verduzco*, 373 F.3d at 1033.

In addition, the Court issued an Order (#302) on May 6,
2013, advising the parties of its intent "to resolve all
evidentiary issues not later than the Pretrial Conference"
scheduled for June 5, 2013.  Indeed, the Court instructed the
parties that if they intended the Court to consider written legal
arguments on *any* issue, the submissions needed to be filed
sufficiently in advance of the Pretrial Conference to allow the
Court time to consider them.

On Saturday, May 25, 2013, Defendants filed an expedited
*ex parte* request under seal in which they sought CJA funding to
engage Dr. Davis as an expert witness.  Although the Court was
concerned about the timeliness of the request for funding, the
Court did not find it prudent to refuse Defendants the
opportunity at least to develop the evidence, and, therefore, the
Court approved the funding.  At the June 5, 2013, Pretrial
Conference, however, Defendants did not give any indication of

their intent to call Dr. Davis.  Defendants explain that although they assembled the relevant information for Dr. Davis as soon as they had the funding authorization and forwarded that information to Dr. Davis on June 4, 2013, they did not receive his preliminary opinion until June 8, 2013, because he was traveling. Defendants filed their initial Rule 16 Notice on June 9, 2013, but they did not provide Dr. Davis's full report to the government or to the Court until June 19, 2013, the eighth day of trial, which was well beyond the established deadlines in this case and near the close of the government's case-in-chief.

Defendants acknowledge their disclosure occurred after the established deadlines.  Nevertheless, they contend Dr. Davis should be permitted to testify because Defendants "only recently realized that representations contained in the printed and web-based materials are central to the government's case."  Defs.' Rule 16 Disclosure (#355) at 6.  Defendants maintain they came to this realization late because they only learned in April and May 2013 that the government conducted an additional interview with witness Mark Knowles and met with Linda English, Felip Holbrook, and others concerning their knowledge of the history of changes to Summit brochure language over time.  Defs.' Rule 16 Disclosure (#355-3) at 2.

At oral argument Defendants emphasized they only recently received complete print copies (as opposed to previously

available website screen shots of pages) of Summit brochures from
the government.  Although the government's counsel acknowledge
they only recently obtained print copies of the brochures that
were then promptly provided pre-trial to Defendants, the
government's counsel pointed out that they had provided
Defendants with the underlying content of the brochures in Word
format far earlier.

Defendants insist these "new" disclosures put a late and
different emphasis on the government's theory of the case, which,
in turn, compelled Defendants to look further for an explanation
as to why it would be plausible for the jury to believe that none
of the Defendants knew of the specific representations in the
brochures that the government contends are fraudulent.
Defendants maintain Dr. Davis's expertise and insight is
necessary to corroborate their denials of culpable knowledge, and
Defendants argue they have a constitutional right to present
Dr. Davis's testimony notwithstanding this very late, mid-trial
disclosure.

The Court finds Defendants' argument concerning the timing
of the disclosure is disingenuous at best.  As the government
correctly points out, it alleged in the Indictment filed over two
years ago that Summit's website falsely represented that exchange
funds would be deposited into financial institutions, and that
assertion has been obvious and central to the government's case

from the beginning.  Moreover, the admissibility of the content
of Summit's webpages (including marketing brochure content) was
the subject of a February 1, 2013, pre-trial Motion (#186) in
Limine filed by the government.  At the March 4, 2013,
evidentiary hearing on that Motion, the government called
witnesses (including Mark Knowles and Amanda Franklet) who
testified about the history of Summit's website redesign process
and the involvement of various Summit employees (including one or
more Defendants) in that process.  On March 8, 2013, the Court
issued an Order (#242) admitting over Defendants' objection
disputed evidence concerning screen shots and other evidence
about the content of Summit's website and its marketing
brochures.

The notion that it was not until late May 2013 that
Defendants realized representations made on Summit's website and
in Summit's brochures were "central" to the government's case is
simply not credible.  Thus, the Court concludes Defendants do not
have a good reason for not identifying this witness sooner.

Of course, the obvious difficulty with Defendants first
presenting a wholly unexpected expert witness during the
government's case-in-chief is that fairness requires the
government to have a reasonable opportunity to counter that
evidence with its own expert, which, under these circumstances,
would include taking the time to find one while in the middle of

a multi-week trial.  Although the government may have significant resources at its disposal to prosecute criminal cases, in the end there are two government trial lawyers in this case fully engaged with dozens of witnesses and working with (and against) six defense attorneys who are working on behalf of the three Defendants.  It is no small matter to impose on the government's trial counsel the burden to prepare to confront a new expert and to find their own expert in the middle of their case.

According to Defendants, the government does not need an opposing expert because government's counsel could simply argue against the conclusions of Defendants' expert.  If, however, argument is all that it takes to deal with this issue, then, as noted below, an expert is not necessary in the first place.

Thus, the Court concludes because Defendants did not proffer this expert timely, it is unfairly prejudicial to the government to impose upon it mid-trial the burden to respond to a new expert and to find its own expert witness to counter such late-proffered evidence.  Accordingly, the Court excludes Dr. Davis's testimony.

## II. __Defendants Have Not Established Dr. Davis's Testimony is Admissible.__

### A. Standards

Federal Rule of Evidence 702 allows expert opinion evidence if (1) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to

determine a fact at issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied these principles and methods reliably to the facts of the case.  Under *Daubert* and Rule 702 an expert must be qualified and the expert's testimony must be reliable and relevant.  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993).  *See also Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003).  The court has a special obligation to determine the relevance and reliability of expert testimony to ensure accurate and unbiased decision-making by the trier of fact.  *Mukhtar*, 299 F.3d at 1063.

The court's inquiry into admissibility of expert testimony is a flexible one.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 882 (9th Cir. 2013).  When evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder."  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)(quotations and citation omitted).  Admissibility of expert testimony is a matter for preliminary determination by the court under Federal Rule of Evidence 104(a), and the party offering the evidence bears the burden of proving admissibility by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592-93.

12 - OPINION AND ORDER -

**B.    Analysis**

**1. Reliability**

Experts may be qualified based on experience alone or experience in conjunction with other knowledge, skill, training, or education.  Fed. R. Evid. 702, advisory comm. notes.

The reliability determination focuses on the scientific validity of the principles and methodology used by the expert. *Daubert*, 509 U.S. at 592–95.  The Supreme Court has established a nonexhaustive list of factors for evaluating the reliability of scientific testimony, including:  "(1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community."  *Id.* at 593–94. The court is required to make a reliability determination in order to fulfill its gatekeeping function.  *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).  *See also Mukhtar*, 299 F.3d at 1066.

Here Defendants' Rule 16 Disclosure and Expert Witness Report are devoid of the specific detail required for the Court to be able to determine whether Dr. Davis's opinion is reliable. There is not any evidence in the materials submitted that indicates whether Dr. Davis's opinion concerning cognitive

13 - OPINION AND ORDER -

processing of website information has been subjected to peer-reviewed publications or whether his theory is generally accepted in the scientific community.

Dr. Davis cites to websites purporting to express industry standards of website creation and maintenance.  From this information Dr. Davis surmises Defendants would not likely have known these standards and then extrapolates that Defendants could have overlooked critical aspects of the Summit website content.  Dr. Davis, however, has not offered any detailed scientific methodology to support his conclusions.  *But cf*. *F.T.C. v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1068-69 & n.7 (C.D. Cal. 2012)(expert witness qualified in the field of "Human Computer Interaction," which is the study of how humans interact with computers and "encompasses both qualitative and quantitative methods and draws upon such fields as computer science, cognitive psychology, and social psychology, among others," was permitted to testify about a "usability inspection" conducted on the defendant's webpages).

The Court notes Dr. Davis has reviewed limited information in the case file, but it is not clear whether he has reviewed all of the relevant information concerning the development, creation, and maintenance of Summit's website and the roles that the individual Defendants may have had in that process.  Reliance on incomplete facts may render an expert's

opinion unreliable.  *See Arjangrad v. JPMorgan Chase Bank, N.A.*, No. 3:10-cv-01157-PK, 2012 WL 1890372, at *6 (D. Or. May 23, 2012)(refusing to permit attorney to testify as expert witness because opinions were unreliable, irrelevant, and unhelpful). Moreover, the government correctly notes it is not clear based on Dr. Davis's analysis and citation to "website best practices" whether his opinion that people "gloss over" dense material applies to the creators of website content or simply to casual websurfers.

In short, the Court concludes Defendants have not established that Dr. Davis's opinion is reliable, and, therefore, the Court excludes his testimony.

**2.    Assistance to the Trier of Fact**

The government also contends Dr. Davis's testimony should be excluded because it will not be helpful to the jury. The Court agrees.

Expert opinion testimony must have "substance such that it would be helpful to the jury." *Alaska Rent-A-Car*, 709 F.3d at 883.  In other words, it should "address an issue beyond the common knowledge of the average layman." *Mukhtar*, 299 F.3d at 1065 n.9.

In voir dire each potential juror expressed familiarity with internet websites.  The Court concludes the subject matter of Dr. Davis's opinion is not so complex that expert testimony is

15 - OPINION AND ORDER -

necessary to assist the jury in deciding the facts at issue. As anyone who has read and agreed to "terms and conditions" on a standard website is aware, expert testimony is not necessary to understand that people viewing websites tend to gloss over dense material. Thus, Defendants have not established specialized expertise is needed for the average layperson to understand that some "glossing over" may occur when reviewing dense information on websites or in printed material. *Arjangrad*, 2012 WL 1890372, at *7 (expert's proposed testimony about human-resources practice standards and an internal human-resource investigation was within the common knowledge of the jury, and, therefore, expert testimony was unnecessary).

## III. <u>Any Probative Value of Dr. Davis's Testimony Is Outweighed by Unfair Prejudice to the Government under Rule 403.</u>

### A.    Standards

Under Federal Rule of Evidence 401 evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Under Federal Rule of Evidence 403 the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence."

### B.   Analysis

The government contends Dr. Davis's purported testimony is not relevant to any fact at issue in this case, and, therefore, his testimony should be excluded.  According to Defendants, however, Dr. Davis's testimony is necessary to corroborate Defendants' expected testimony that they were not actually aware of the representations on the website because there is a significant risk that the jury will not credit such testimony in light of the fact that Defendants were the principals of Summit. In particular, Defendants contend Dr. Davis's testimony is necessary to help explain how Defendants could miss seemingly important information on Summit's website or in the marketing brochures.

The Court acknowledges corroborative testimony generally is admissible subject to Rule 403 balancing.  Here, however, the combination of Defendants' late notice, the questionable reliability of the proffered evidence, the fact that the proffered evidence is more probably than not something already within the common-sense understanding and experience of the jury, and the significant disruption and delay that would result from this late witness testifying at this stage of the trial, the

Court concludes any probative value that Dr. Davis's testimony might have is outweighed by these Rule 403 factors.

For all of the above reasons, the Court excludes Dr. Davis's testimony.

## CONCLUSION

For these reasons, the Court **GRANTS** the government's Motion (#360) *in Limine* to Preclude the Testimony of Proposed Expert Witness Shawn Davis, Ph.D.

IT IS SO ORDERED.

DATED this 24th day of June, 2013.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

18 – OPINION AND ORDER –